UNITED STATES DISTRICT COURT
for the
Southern District of Texas

| | |
|---|---|
| MUAY THAI ALLIANCE OF TEXAS §<br>Kayan Sitsanthaparn §<br>Plaintiffs, §<br> §<br> §<br>V. §<br> § Civil Action No. **M-15-738**<br> §<br>William H. Kuntz, and TEXAS §<br>DEPARTMENT OF LICENSING §<br>AND REGULATION (TDLR), et al. §<br>Defendants. § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

To the Honorable Judge of the Above Styled Court:

COME NOW, the PLAINTIFFS Muay Thai Alliance of Texas (MTAT) and its Chairman Kayan Sitsanthaparn to bring this cause against the DEFENDANTS, William H. Kuntz (in his official capacity as Executive Director of the Texas Department of Licensing and Regulation), the Texas Department of Licensing and Regulation (hereinafter referred to as "TDLR" and/or "Department"), et al., for violation and deprivation of Civil Rights and Privileges guaranteed by the First and Fourteenth Amendments of the United States Constitution.  In support thereof, the Plaintiff would respectfully show unto the Court the following:

### A.  Jurisdiction

The Plaintiffs bring this complaint pursuant to 42 U.S.C §1983 and 42 U.S.C. §1985 therefore, the Court has jurisdiction to hear the merits, render judgment, and grant the Plaintiffs any and all available relief permitted by Federal Law.

### B.  Venue

The Plaintiffs file this complaint in the U.S. District Court for the Southern District of Texas pursuant to 28 U.S. C § 1391 b(2) because the underlying event that gave rise to the Defendants' actions (subject of the Plaintiffs' complaint) took place in Edinburg, Texas---within the boundaries of the Southern District Court's jurisdiction.

### C. Applicable State Law:   Statute of Limitations

Although there is no statute of limitations for a cause brought pursuant to 42 U.S.C §1983 and 42 U.S.C. §1985, the Plaintiffs recognize that the Court defers to State limitations for injury arising from acts.   Therefore since the Plaintiffs contend that they were maliciously prosecuted as one of

the acts that gave rise to this claim, they refer to Civil Practice and Remedies Code Title 2, Subtitle B. Chapter 16, Subchapter A. Sec. 16.002 which states:

> *"(a) A person must bring suit for malicious prosecution, libel, slander, or breach of promise of marriage not later than one year after the day the cause of action accrues."*

### D. Applicable State and Federal Law:

For purposes of establishing the Plaintiffs' contention that the Defendants and its licensees do not have a legal right to regulate the art and sport of Muay Thai or deceive the public in the promotion of events that do not meet accepted standards, the Plaintiffs present Texas Business and Commerce Code, Title 2, Chapter 16, Subchapter A. (Texas Trademark Act), The Federal Copyright Act, and Federal Trademark (Lanham) Act including but not limited to the following statute:

*15 U.S.C. § 1125 - False designations of origin, false descriptions, and dilution forbidden*

*"(a) Civil action*

> *(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—*
>
>> *(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."*

### E. Applicable State Law:   Texas Deceptive Trade Practices Act (DTPA)

For purposes of establishing the Plaintiffs' contention that the Defendants and its licensees do not have a legal right to regulate the art and sport of Muay Thai or deceive the public in the promotion of events that do not meet accepted standards, the Plaintiffs present Texas Business and Commerce Code, Title 2, Chapter 17.

### F. Applicable State Law and Definitions:   Liability

For purposes of establishing the Defendants' liability for the violations as presented in this complaint, the Plaintiffs presents the following definitions and statutes as found in Texas Civil Practice and Remedies Code, Title 5, Chapter 101, Subchapter A. Sec. 101.001 which state that:

*"(3) "Governmental unit" means:*

> *(A)  this state and all the several agencies of government that collectively constitute the government of this state, including other agencies bearing different designations, and all*

*departments, bureaus, boards, commissions, offices, agencies, councils, and courts;*

*(B) a political subdivision of this state, including any city, county, school district, junior college district, levee improvement district, drainage district, irrigation district, water improvement district, water control and improvement district, water control and preservation district, freshwater supply district, navigation district, conservation and reclamation district, soil conservation district, communication district, public health district, and river authority;*

*(C) an emergency service organization; and*

*(D) any other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution.*

(5) "Scope of employment" means the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority.

(6) "State government" means an agency, board, commission, department, or office, other than a district or authority created under Article XVI, Section 59, of the Texas Constitution, that:

(A) was created by the constitution or a statute of this state; and
(B) has statewide jurisdiction.

For further purposes of establishing the Defendants' liability, the Plaintiff offers the following sections as found in Civil Practice and Remedies Code, Title 5, Chapter 104.

Sec. 104.001. State Liability; Persons Covered. In a cause of action based on conduct described in Section 104.002, the state shall indemnify the following persons, without regard to whether the persons performed their services for compensation, for actual damages, court costs, and attorney's fees adjudged against:

(1) an employee, a member of the governing board, or any other officer of a state agency, institution, or department;

(2) a former employee, former member of the governing board, or any other former officer of a state agency, institution, or department who was an employee or officer when the act or omission on which the damages are based occurred;

Sec. 104.002. State Liability; Conduct Covered.

(a) Except as provided by Subsection (b), the state is liable for indemnification under this chapter only if the damages are based on an act or omission by the person in the course and scope of the person's office, employment, or contractual performance for or service on behalf of the agency, institution, or department and if:

(1) the damages arise out of a cause of action for negligence, except a willful or wrongful act or an act of gross negligence; or

(2) the damages arise out of a cause of action for deprivation of a right, privilege, or immunity secured by the constitution or laws of this state or the United States, except when

*the court in its judgment or the jury in its verdict finds that the person acted in bad faith, with conscious indifference or reckless disregard; or*

*(3) indemnification is in the interest of the state as determined by the attorney general or his designee.*

Sec. 104.003. *Limits on Amounts for Recoverable Damages.*

(a) *Except as provided by Subsection (c) or a specific appropriation, state liability for indemnification under this chapter may not exceed:*

*1) $100,000 to a single person indemnified and, if more than one person is indemnified, $300,000 for a single occurrence in the case of personal injury, death, or deprivation of a right, privilege, or immunity;"*

## G. Background and Facts

1. The Muay Thai Alliance of Texas (MTAT) is a duly registered cultural and sporting entity operating as a domestic non-profit organization in the State of Texas. The MTAT has a Constitution and By Laws. Among its goals are the preservation and proper promotion of the Art and Sport of Muay Thai—a martial art originating in and registered as a National Treasure of the Kingdom of Thailand. *(See Exhibits A, B-1, & B-2)*

2. The Texas Department of Licensing and Regulation (TDLR) is an occupational license and regulation agency.

3. On or about November 29th, 2012, the Defendant, Texas Department of Licensing and Regulation (TDLR) contacted the Plaintiffs, Muay Thai Alliance of Texas (MTAT), via email through its employee Michelle Gonzales. Ms. Gonzales, an employee with the Defendant's enforcement department, investigated an anonymous complaint that the Plaintiffs were in the process of conducting an alleged "illegal combative sports event" on December 1st, 2012 at Rodz Sports Theater in Edinburg, Texas. *(See Exhibit C)*

5. The Plaintiffs, through its Chairman Kayan Sitsanthaparn, responded on or about November 29th, 2012 via email *(See Exhibit D)* and attached a letter *(See Exhibit E)* explaining the nature and purpose of the event and the Defendant's lack of jurisdiction to take action over education/training/cultural matters that are not within the Defendant's scope of regulation. In said response, the Plaintiffs further explained that eight similar events had previously been held since 2009 **without** any such action taken against the Plaintiffs.

6. In its response, the Alliance gave notice to the Defendant that its investigative actions were an abuse of its authority meant to burden and/or otherwise oppress the Plaintiffs. The Plaintiffs further gave notice of its intent to seek legal recourse if the Defendant took action against them. *(See Exhibit E)*

7. On or about November 29th, 2012, the Defendants contacted the Plaintiffs, Muay Thai Alliance of Texas (MTAT) and Kayan Sitsanthaparn, via email through its employee Michelle Gonzales. The matter was referred to a supervisor. *(See Exhibit F)*

8. On or about July 30th, 2013, the Defendants filed their Notice of Violation against the Plaintiffs and proceeded to prosecute it in Cause #: 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.BOX filed before the State Office of Administrative Hearings (SOAH). Although the Plaintiffs were never served with the notice, it was later retrieved via discovery in the contested case hearing. *(See Exhibit G)*

9. On or about September 19th, 2013, the Plaintiffs responded via email with regard to a Notice of Default Judgment. *(Exhibit H)*

10. On or about October 1st, 2013, the Defendants filed their Amended Notice of Administrative Hearing. *(Exhibit I)*

11. On or about November 5th, 2013, the Plaintiffs, through the Chairman, responded pro se in defense and filed its Respondent's Motion for Continuance. *(See Exhibit J)*

12. On or about December 18th, 2013, the Defendant, Texas Department of Licensing and Regulation (TDLR) contacted the Plaintiffs through its employee Michelle Gonzales to inform them of a complaint being investigated surrounding a separate, yet similarly formatted event, held by the Plaintiffs on September 14th, 2013 in Austin, Texas. *(See Exhibit K)*

13. The Plaintiffs, through its Chairman Kayan Sitsanthaparn, again responded on or about January 3rd, 2014 via email *(See Exhibit L)* to provide the following information:

> a.) the promotion of a similar event being conducted by another individual not associated with the Plaintiffs, and b.) the promotion of an event being promoted by Xtreme Combat Productions under license of the Defendants that was being falsely advertised.

14. On or about January 3rd, 2014, a letter *(See Exhibit M)* was sent to the Defendants, through Michelle Gonzales surrounding the Defendants' prosecution of the Plaintiffs for a similar event held in Austin, Texas on September 14th, 2013. The Plaintiffs again explained the nature and purpose of the event and the Defendant's lack of jurisdiction to take action over education/training/cultural matters that are not within the Defendant's scope of regulation. In said response, the Plaintiffs further explained that eight similar events had previously been held since 2009 **without** any such action taken against the Plaintiffs.

15. On January 17th, 2014, Cause #: 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.BOX was heard before the State Office of Administrative Hearings (SOAH).

16. On or about January 21st, the Chairman emailed the Combative Sports department to provide information and evidence regarding similar events being held by another individual. *(Exhibit N)*

17. On or about January 30th, 2014, Administrative Law Judge Roy G. Scudday, issued a Proposal For Decision (PFD) ruling in favor of MTAT aand proposed that the cause be dismissed. *(Exhibit O)*

18. After opportunity was given for both parties to file exceptions and replies, Administrative

Law Judge Roy G. Scudday, closed the hearing record.

19. On or about February 12th, 2014 a Notice of Intent to Sue was sent by the Plaintiffs to Mr. Jose "Rock" Maria Balboa President of Xtreme Combat Promotions LLC—a licensee of the Defendants—for false advertising, lack of sanctioning authority, lack of protocol, and lack of qualified officials. A copy of this letter was sent to Mr. Brad Bowman, General Counsel for the Defendants. *(Exhibit P)*

20. On or about March 4th, 2014, Administrative Law Judge Roy G. Scudday issued a letter upholding his Proposal For Decision. *(Exhibit Q)*

21. On or about March 4th, 2014, a letter was sent to Ms. Mary Winston, Staff Attorney for the Defendants describing evidence that had surfaced surrounding Mr. Robert Tapia, an Investigator for the Defendants. As the individual who investigated the Plaintiffs' event, and whom was present on the night of December 1st, the Defendants relied on Mr. Tapia's testimony during the contested case hearing held before the State Office for Administrative Hearings (SOAH).

Said letter describes the discovery of Mr. Tapia drinking alcoholic beverages while in performance of his duties to investigate the Plaintiffs and their event on behalf of the Defendants. Mr. Tapia testified at hearing that he had ordered food but did not have anything to drink.

A copy of the letter was also sent to Mr. Brad Bowman, General Counsel for the Defendants. *(Exhibit R)*

22. On or about April 4th, 2014, Jermaine Anugwom, a regional representative of the Plaintiffs in College Station, Texas was issued correspondence removing him from his post as representative and banned from the Alliance after hosting an illegal combative sports event and other reasons. The event was discussed with Mr. Gus Calderon, an employee (Inspector) of the Defendants and a copy of the letter was sent to him by hand delivery. *(Exhibit S)*

23. On or about April 10th, 2014, the Plaintiffs informed Mr. Greg Alvarez, Combative Sports Director for the Defendants of a change in status for the art and sport of Muaythai and to address the Plaintiffs' exemption status as afforded by 13 Texas Occupations Code Section 2052.110. Mr. Alvarez failed to respond. *(Exhibit T)*

24. On or about May 21st, 2014, the Defendants' Combative Sports Department was invited to participate in a Muaythai Referee and Judge seminar announced by the Plaintiffs. The Defendants did not respond or otherwise show interest. *(Exhibit U)*

25. On or about May 26th, 2014, the Plaintiffs responded to a public request for changes to any and all Combative Sports Rules, Laws, and/or policies and sent them to Mr. Lee Parham, Legislative Director for the Defendants. *(Exhibit V)*

26. On May 28th, 2014, at a regularly scheduled meeting, the Defendants voted to adopt the ALJ's Proposal For Decision (PFD) and issued its Decision Of The Commission. *(Exhibit W)*

27. On or about August 25th, 2014 the Plaintiffs addressed the Defendants in writing regarding the adoption of its new Combative Sports Rules, Laws, and/or policies. Despite the submission of proposed changes by the Plaintiffs, the Defendants failed to consider, reference, or adopt the said proposed changes. *(Exhibit X)*

28. On about October 13th, 2014 a case status letter regarding BOX20140007891 was sent by Ms. Mary Winston, staff attorney for Defendants to the Plaintiffs. *(Exhibit Y)*

29. On about January 7th, 2015 a case status letter regarding BOX20140007891 was sent by Ms. Mary Winston, staff attorney for Defendants to the Plaintiffs. *(Exhibit Z)*

30. On or about February 3rd, 2015, the Plaintiff sent the Defendants a Notice of Intent To Sue outlining its grievances against the Defendant for redress. *(Exhibit AA)*

31. On about February 19th, 2015 a case status letter dismissing BOX20140007891 was sent by Mr. Ron Foster, staff attorney for Defendants to the Plaintiffs. *(Exhibit BB)*

32. After email and telephone correspondence between the two parties on March 6th, 2015, a formal meeting was held between both parties on March 24th, 2015 at the E.O. Thompson Building in Austin, Texas to address the Plaintiff's issues. In attendance of this meeting were Mr. William H. Kuntz, Executive Director for the Defendants, Mr. Brad Bowman, General Counsel for the Defendants, Mr. Charles E. Johnson, Assistant General Counsel for the Defendants, and Mr. Lee Parham, Legislative Director for the Defendants. *(Exhibits CC & DD)*

33. After discussion, no agreement was reached between the parties, nor was relief granted by the Defendants.

34. On or about March 13th and March 26th, 2015, the William H. Kuntz issued an "Order to Set Aside Agreed Order." Mr. Francisco Trevino, a student of Plaintiff Kayan Sitsanthaparn, was a participant in the Plaintiffs' underlying event held on December 1st, 2012. Mr. Trevino was fined in the amount of $1,000.00 on November 13th, 2014 for allegedly violating the Defendants' rules and State statutes. Mr. Trevino signed the agreed order before the underlying facts of the Defendants' contested case against the Plaintiffs had been adjudicated because his license was being held by the Defendants and he had an upcoming competitive event. *(Exhibit EE)*

35. On or about March 27th, 2015, the Plaintiffs corresponded with the Defendant in response to the meeting held between the parties to further explain its position and attempt to reach an agreement with the Defendant. *(Exhibit FF)*

36. On or about April 9th, 2015, Mr. Charles Johnson responded on behalf of the Defendants detailing reasons as to why the Defendants could not reach an agreement with the Plaintiffs. *(Exhibit GG)*

37. On or about April 13th and 22nd, 2015, the Plaintiff issued its Final Notice of Intent to Sue to the Defendants with a deadline of May 1st, 2015 to respond with an agreement to grant the Plaintiffs its request for relief. *(Exhibits HH & II)*

38. On or about April 24th, 2015, the Defendants issued a full refund of the previous fine assessed on Mr. Trevino. *(Exhibit JJ)*

39. On or about April 30th, 2015 the Defendants responded by addressing the issue of the Plaintiffs' request for status that would grant them an exemption from licensing and bonding requirements. The Defendants failed to grant any other requests for relief. *(Exhibit KK)*

### H. Argument & Authorities

It is the Plaintiffs' contention that the Department's act of prosecuting the Plaintiffs was without cause, discriminatory, and committed "under the color of law" to oppress, burden, intimidate, or otherwise create a hardship for the Plaintiffs so as to discourage and/or altogether impede its mission. In doing so, the Defendants violate the Plaintiffs' First Amendment rights to Assembly by negatively affecting or impacting the coordination of Alliance events. The Defendants violate the Plaintiffs' First Amendment Rights to Speech/Expression by negatively affecting or impacting participation in Alliance events. The Defendants violate the Plaintiffs' First Amendment Rights to Freedom of Religion/Culture by negatively affecting or impacting their ability to engage in cultural art/sport protocol that is prescribed by the governing bodies. Furthermore, the statutes promulgated and enforced by the Defendants continue to violate the Plaintiffs' Fourteenth Amendment rights as outlined in the Privileges, Immunities, and Equal Protection Clauses and continue the cycle of violating the Plaintiffs' First Amendment rights. As such, the Plaintiffs have a right to continue their mission without fear of reprisal or prosecution at the hands of the Defendants solely because they have the authority to do so.

### Discrimination, Lack of Evidence and Good Cause

The Muay Thai Alliance of Texas (MTAT) was established in 2009 and is the State of Texas first and only organization dedicated to preserving and promoting the art and sport of Muaythai through its mission *(See Exhibit A)*. Although mixed martial arts practitioners have employed the use of its techniques for competition, Traditional Muay Thai is practiced by a small minority of individuals. The State of Texas is home to a small number of traditional Muay Thai schools whom are members of the MTAT. Notwithstanding the fact that MMA practitioners only use part of the techniques, the MTAT is inclusive of and encourages all individuals wishing to learn more about Muay Thai to become members. Among many facets of its mission, it has a duty to educate and properly develop its members for safe and meaningful participation.

Accounted for in the Plaintiffs' Constitution and By-Laws *(Exhibit B-1)* as part of its development program *(Exhibit B-2)*, the Plaintiffs' conduct ranking tests and talent search events (also known as "scrimmages"). The scrimmage events are the Plaintiffs' sole method of helping to develop its member athletes for safe competition at the amateur level and in doing so, enforces stringent rules of engagement and participation so as to minimize risk of injury in the event. The event also serves to develop athletes for actual competition by going through all protocol that would be encountered in an actual sanctioned competitive event. Texas statutes exempt martial arts organizations in the coordination of these types of events as long as certain elements have been proven to establish intent (training/education), legitimacy (coordination by a martial arts

organization such as the Alliance), and control of techniques (control or power and use of partial techniques).

As mentioned, Texas Occupations Code Title 13. Subtitle B. Chapter 2052, Subchapter A, Sec.2052.002(4) defines a combative sport:

> "(4) "Combative sports" means sports, including boxing, kickboxing, martial arts, and mixed martial arts, in which participants voluntarily engage in full contact to score points, to cause an opponent to submit, or to disable an opponent in a contest, match, or exhibition. The term does not include student training or exhibition of students' skills conducted by martial arts schools, or association of schools, where the students' participation is for health and recreational purposes rather than competition and where the intent is to use only partial contact."

On or about November 29th, 2012, the Defendants, through its employee Ms. Michelle Gonzales, corresponded with the Plaintiffs to investigate a legitimate event scheduled to be conducted by the Plaintiffs. It is important to note that the Plaintiffs informed Ms. Gonzales that they had satisfied the elements of the aforementioned definition and **held eight talent search events between 2009 and 2012 without any interruption or prosecution by the Defendants** until the Defendants made the inquiry that gave rise to the Defendants' prosecution of the Plaintiffs. *(See Exhibits C, D, E, & F)* Additionally, Mr. Hector Barragan, a Combative Sports Department employee for the Defendants, was present at the Plaintiffs' fourth developmental event to observe and give feedback to both parties without incident or negative action by the Defendants. As of the date of this petition, both Ms. Gonzales and Mr. Barragan are no longer employed by the Defendants.

While a contested case hearing was still pending for the initial December 1st, 2012 event *(See Exhibits G, H, I, & J)*, the Defendants contacted the Plaintiffs on or about December 18th, 2013 *(See Exhibit K)* to inform them that they have proceeded to investigate the Plaintiffs with regard to another anonymous complaint alleging that a similar format event held on September 14th, 2013 in Austin, Texas by the Plaintiffs was also an illegal combative sports event that violated State law.

In *U.S. vs. Torquato,* U.S. Court of Appeals, Third Circuit (1979) 602 F2d. 564, the Defendant was convicted of conspiring to violate the Hobbs Act and substantive violations of that Act. The Defendant appealed with the Court finding that

> "Some credible evidence must be adduced indicating that the government intentionally and purposefully discriminated against the defendant by failing to prosecute other similarly situated persons..."

While the ruling in *Torquato* points to a lack of evidence that would demonstrate discrimination, the Plaintiffs' evidence clearly shows that discrimination took place in that the Defendants had reasonable knowledge of similarly held events by other individuals but did not take action against them. They are as follows:

Case 1

After responding to the Defendants' allegations on or about January 3rd (See Exhibit L & M), the Defendants attempted to prosecute Michael Corley of Houston, Texas based on information

provided by the Plaintiffs on January 3rd and 21st, 2014 that he had in fact conducted an event similar to that of the Plaintiffs *(See Exhibits L & N)*. While a case was opened by the Defendants, and investigation was ongoing *(See Exhibits Y & Z)*, the matter was later dismissed on or about February 19th, 2015 for "lack of evidence" *(See Exhibit BB)*. Upon discussing the matter via telephone with Mr. Ron Foster, a staff attorney for the Defendants, the reason given for not prosecuting the case was because he was adhering to the precedent created by the Decision of the Commission *(See Exhibit W)* rendered by the Defendants pertaining to the Plaintiffs' case. It is the Plaintiffs' position that while it was burdened with having to show strict proof that they had adhered to every element of the statute in *Sec.2052.002(4))* to claim exemption, none of the other individuals conducting similarly styled events operated as an association of schools. As such, none of these were prosecuted or required to show proof of legality for their respective events.

Case 2

Mr. Gus Calderon, an employee of the Defendants, had knowledge of another such illegal event conducted by Jermaine Anugwom of College Station, Texas *(See Exhibit S)* but failed in his duty to report the event to his superiors in the Defendants' Combative Sports Department.

Cases 3, 4, 5, 6, and 7

In October of 2014, the Plaintiffs received information from anonymous individuals who reported that similarly coordinated events were in fact being conducted by other individuals—many of these reported violations were assigned tracking numbers by the Defendants' online complaint system *(See Exhibits LL, MM, NN, OO, & PP)*. After reviewing the complaints, and again although the Plaintiffs were required to show proof of compliance with State law, the Plaintiffs contend that the reported events in question do not meet the statutory elements necessary to be deemed as exempted events (per definition stated in *Texas Occupations Code Title 13. Subtitle B. Chapter 2052, Subchapter A, Sec.2052.002(4)*. As such, this should have warranted the prosecution of the coordinators of those illegal events. One such event suggests that a well-known referee licensed by the Defendants encouraged the host of the event to leave registration forms at his place of business (for interested parties). However, to date, the individuals named in the complaints continue to conduct their events without corrective action taken against them. Hence, the Plaintiffs contend that they were discriminated against and methodically singled out for purposes of intimidation, discouragement, and to impede their mission.

Lack of Evidence and Good Cause

After the hearing record was closed and before the Defendants rendered their final decision to ultimately dismiss their case against the Alliance, the Plaintiffs discovered that Mr. Robert Tapia (an employee of the Defendants whose duty it was to investigate the Plaintiffs' December 1st, 2012 event) was identified as engaging in the consumption of alcoholic beverages while in the performance of his duties on the evening of (and while in attendance of) the Plaintiffs' December 1st, 2012 event. Despite not having concrete evidence to substantiate its claims, the Defendants proceeded with the contested case hearing and relied solely on Mr. Tapia's oral testimony. When questioned under oath, Mr. Tapia testified that he had ordered food, but had nothing to drink. He

further testified that he adjourned to his hotel room (situated immediately adjacent to the event venue) to write his report. A letter describing the Plaintiffs' discovery was sent to Ms. Mary Winston, staff attorney for the Defendants *(See Exhibit R)*. As of the date of this petition, Mr. Tapia is no longer employed by the Defendants.

Animus and Intent

The Defendants not only prosecuted the Plaintiffs, they attempted to prevent a TDLR licensed individual in his ability to compete in a TDLR sanctioned event held on November 15th, 2013. Francisco Javier Trevino, a professional mixed martial arts athlete licensed by the Department and also a long time student trained by Plaintiff Kayan Sitsanthaparn, participated in the underlying December 1st, 2012 event as a coach and as a referee who maintained control of the event matchups and enforced the Plaintiffs' rules of engagement for said event.

Mr. Trevino was contacted by and cooperated with the Defendants' investigators via telephone to provide information surrounding his participation in the Plaintiffs' event. However, the Defendants took action to prosecute Mr. Trevino. Not having an attorney at the time and unable to defend himself after filing their complaint with the Court, the Defendants later proceeded to seek default judgment against him for failure to respond.

At or around the time that the Defendants sought default judgment, Mr. Trevino was scheduled to compete in a mixed martial arts contest conducted by Legacy Promotions and sanctioned by the TDLR on November 15th, 2013. After discussion and negotiation, Trevino was forced into agreeing to an Agreed Order with the Defendants to pay a $1,000.00 fine (and accept culpability for his role in the Plaintiffs' event) or be prohibited from competing in the event that he was scheduled to fight in on the following day. Mr. Trevino paid the fine and competed in said event that ultimately garnered the attention of and enabled him to be offered a multi-contest contract with the Ultimate Fighting Championship—the world's top mixed martial arts promotion.

The Defendants acted against Mr. Trevino **after** the Plaintiffs formally responded before the State Office for Administrative Hearings (SOAH) on November 5th, 2013 (See Exhibit J) and **while the underlying facts of the December 1st, 2012 event for which the Plaintiffs were being prosecuted had not yet been adjudicated**. It is the Plaintiffs' further position that the Defendants' actions were committed in an attempt to use the Agreed Order against the Plaintiffs during the contested case hearing and damage Mr. Trevino's relationship and affiliation to the Plaintiffs—hence, further demonstrating that the Defendants acted with prejudice and contempt of the Plaintiffs.

After the Plaintiffs prevailed before SOAH and the Decision of the Commission was issued in favor of the Plaintiffs, on or about March 13th and 26th, 2015, the Defendants issued an "Order to Set Aside Agreed Order" (See Exhibit EE) and on April 24th, 2015 issued Mr. Trevino a full refund of the illegally imposed fine in the amount of $1,000.00 *(See Exhibit JJ)*

Although the Plaintiffs prevailed at trial *(See Exhibits O & Q)* and the Defendants' pending complaint and investigation surrounding the September 14th, 2013 event was eventually dismissed in the interest of justice, the Defendants' act of prosecuting the Plaintiffs and at least one

associated participant (without evidence or good cause) demonstrates that they acted in a discriminatory manner that violates the Plaintiffs' rights. This is exacerbated by the fact that to date, and despite the Defendants' clear knowledge thereof, no other individual has been prosecuted for hosting similar events that continue to fall short of the standard as defined by State statute or by the precedent set by the Administrative Law Judge's findings and the Defendants' acceptance of those findings in *TDLR vs. MTAT*.

As such, it is the Plaintiffs' position that they satisfy the ruling in *Torquato* to demonstrate that the Defendants acted with discrimination and with the intent of intimidating the Plaintiffs to prevent them from continuing their mission—hence, violating their Constitutional rights.

### Violation of Intellectual Property Rights and Texas Deceptive Trade Practices Act

Muay Thai (also known as "Muaythai" or "Thai Boxing") is an ancient martial art originating in the Kingdom of Thailand.  In ALL of its forms—whether recreational or competitive—it remains an art that embodies traditional, cultural, and religious attributes that are **inseparable**.  It is regulated by the Royal Thai Government, the Thai Ministry of Culture, the Sport Authority of Thailand, the World Muaythai Council (WMC) and the International Federation of Muaythai Amateur (IFMA) and has been registered as a National Treasure.  As such, from an intellectual property standpoint, the Department is not authorized with the task or right of regulating the art, sport, and National Treasure of Muay Thai by the proper legally recognized entities, and promoters do not have the right to conduct events that do not follow protocol or meet the prescribed standards of the proper governing bodies.

Through the Chairman, Plaintiffs have been chartered by the proper authorities to conduct its mission to protect and preserve the art and sport of Muay Thai and provide a meaning opportunity for practitioners and athletes to participate.   The Plaintiffs contend that the Defendants and all other who fraudulently seek to "regulate" and promote "Muay Thai" events for financial gain without proper authority to do so are bound to 15 U.S.C. § 1125 which states:

"*(a) Civil action*

> *(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—*
>
>> *(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.*"

Section 17.46 of the Texas Deceptive Trade Practices Act (DTPA) echoes the same elements found in 15 U.S.C. § 1125 by stating that:

> *(a) False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful and are subject to action by the consumer protection division under Sections 17.47, 17.58, 17.60, and 17.61 of this code.*
>
> *(b) Except as provided in Subsection (d) of this section, the term "false, misleading, or deceptive acts or practices" includes, but is not limited to, the following acts:*
>
>> *(1) passing off goods or services as those of another;*
>> *(2) causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;*
>> *(3) causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another;*
>> *(4) using deceptive representations or designations of geographic origin in connection with goods or service;*
>> *(5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not;……"*

Therefore, by merely using the name "Muay Thai" or any combination thereof to garner a consumer's attention in any promotional manner to then fail in the duty to follow the protocol and standards as prescribed and accepted by the legally recognized governing bodies is a misrepresentation of the art and sport of Muay Thai and **IS** fraud. This causes confusion or misunderstanding, uses deceptive representations, etc. that causes the Defendants and their licensees to fall subject to civil penalty under State and Federal Law.

For purposes of further demonstrating the Defendants' lack of regulatory authority with regard to Muay Thai, the Plaintiffs further state that the Defendants are also not authorized to possess nor do they have the curriculum to train or certify Muay Thai referees, judges, coaches, or competitors to provide for safe, fair, and equitable participation in sanctioned amateur and professional Muay Thai events held in Texas. As such, the Defendants cannot possibly or reasonably be entrusted to "regulate" the art and sport of Muay Thai or allowed to issue licenses to individuals for purposes of promoting a "Muay Thai event."

### Discrimination and Failure to Demonstrate a Compelling State Governmental Interest

The Defendants have clearly discriminated against the Plaintiffs by prosecuting them, and further continue to discriminate even after being apprised by the Plaintiffs of several flaws in the Defendants operations. The failure to correct those flaws shows that there is a lack of compelling state governmental interest when it comes to the "regulation" of Muay Thai by the Department.

The TDLR has been responsible for issuing licenses to individuals not possessing proper sanctioning authority to promote "Muay Thai" events as promulgated in the statutes. As a result, the lack of proper protocol and lack of qualified officials jeopardizes the safety of the athletes, deceives consumers (event ticket holders) whom have paid to see the event, and overall, grossly misrepresents the art and sport of Muay Thai.

In support, the Plaintiffs state that on or about February 12th, 2014, the Plaintiffs apprised Mr. Jose Maria Balboa of their intent to bring suit under the Texas Deceptive Trade Practices Act (DTPA) *(See Exhibit P)* on the grounds that the TDLR and the licensee are responsible for fraudulently selling an event as "Muay Thai" to consumers when their event does not follow the accepted and prescribed protocol and guidelines. A copy of the document was sent to Mr. Brad Bowman, General Counsel for the Defendants. A response from the Mr. Bowman on the Defendants' behalf was never given. As a result, the Department and its employees' lack of education and competence in Muay Thai matters, the TDLR enables licensees to commit fraud. Furthermore, the TDLR's failure to protect consumers after having been apprised of these flaws further shows a lack of duty and responsibility that cannot reasonably be construed as demonstrating a compelling interest or as acting in the public's best interest.

The Defendants have imposed a series of financial requirements (*set out in Texas Occupations Code Title 13. Subtitle B. Chapter 2052, Subchapters C & D*) that must be met by entities/promoters granted a license under their regulatory umbrella—including a 3% tax on gate receipts and other miscellaneous licenses. To date, because the Defendants cannot legally or properly provide competent educational services that would otherwise demonstrate a true and compelling governmental interest that would impact consumers and provide for safe and equitable competition for Muay Thai athletes in Texas, it is the Plaintiff's position that the Defendants have created a "taxation without representation" climate that hurts consumers, instructors, gyms, and athletes in Texas' Muay Thai community. The Defendants' failure to consult with the Alliance regarding Muay Thai education curriculum and/or training of match officials is at least, discrimination against the Plaintiffs and can also be construed as being against the public interest.

Texas Occupations Code Title 13. Subtitle B. Chapter 2052, Subchapters C Sec.2052.054(a) states that ***"the commission may recognize, prepare, or administer continuing education programs for persons licensed under this chapter."*** However, despite knowing of the Alliance's foundation, mission, and existence, the Department has never recognized the Plaintiffs to satisfy the statute's plain language, nor has it attempted to request educational material, curriculum, or any further knowledge in Muay Thai from the Plaintiffs that would indicate that the Department is truly working in a matter of legitimate and compelling State governmental and public interest and that the State's statutes were promulgated for that purpose.

Taking a proactive approach to address this issue in a coöperative manner, on or about May 21st, 2014, the Plaintiffs issued an invitation to Mr. Greg Alvarez, Combative Sports Program Director for referees and judges licensed under the Defendants to participate in a Muay Thai referee and judge seminar *(See Exhibit U)*, but Mr. Alvarez altogether failed to respond to the invitation on behalf of the Defendants.

On or about May 26th, 2014, the Plaintiffs submitted proposed changes to statutes and rules enforced by the Defendants *(See Exhibit V)*. However, the Defendants' failure to consider or adopt any of the proposed rules and statutes regarding Muay Thai as submitted by the Alliance not only demonstrates discriminatory practices against the Plaintiffs, but also demonstrates a lack of compelling state governmental interest that is against the public interest. *(Exhibit X)*

In *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520 (1993), the Court mandated a

standard of strict scrutiny: state action had to be justified by a compelling governmental interest, and be narrowly tailored to advance that interest. Because the ordinance suppressed more religious conduct than was necessary to achieve its stated ends, it was deemed unconstitutional.

In this case, the Plaintiffs contend that the State's actions, current statutes, Department practices, and policies are discriminatory and do not aid in the interest of the Alliance's mission to promote and preserve the culture, art and sport of Muay Thai through education, help develop amateur and professional athletes or trainers, create a fair referee and judging system, promote athlete safety, or keep promoters honest so as to protect consumers. It has attempted to help guide the Defendants in a manner that would advance the public interest in the least restrictive manner. However, the statutes, practices, and policies continue to hurt the integrity of the art and sport of Muay Thai and only aid in the continuation of being misunderstood in Texas.

### Erroneous Regulation of Amateur Combative Sports Under the Texas Occupations Code

The State's current statutes are discriminatory against amateur combative sports and verily unconstitutional in that they violate freedoms guaranteed by the U.S. Constitution. These statutes have been included in the Texas Occupations Code and impede our Mission and the art and sport from growing.

By plain language and definition of the words "leisure" or "recreational", participation in a leisure and/or recreational activity as an amateur athlete is NOT a profession or an occupation. Contrary to the Plaintiffs' position, the Defendants "regulate" the amateur sport as if it were a profession or occupation. Amateur athletes participate in Muay Thai for leisure, recreation, or for advancement to our State and National teams for participation in competition in events recognized by our world governing bodies or under the patronage of the International Olympic Committee (IOC) for NO financial compensation. As such, the Department's "regulation" is not needed when the Plaintiffs are already required to meet the stringent requirements and rules set out by the appropriate world governing bodies for Muay Thai. As in It is the Plaintiffs' position that the Defendants' regulation of amateur combative sports is discriminatory, unconstitutional, and against the public interest.

### 13 Texas Occupations Code Section 2052.110 Exemptions

The status of the art and sport of Muay Thai has drastically changed since the first statutes addressing Muay Thai were ratified by Texas lawmakers. The International Federation of Muaythai Amateur (IFMA) has taken huge strides over the past ten years to become a member of GAISF/SportAccord, the International World Games Association (IWGA), the International University Sports Federation (FISU)—all of whom are recognized by or operate under the patronage of the International Olympic Committee (IOC). As of April 2014, Muay Thai was added as medal sport in the World Games. As previously stated, on or about April 10th, Mr. Alvarez was notified of the change in status *(See Exhibit T)*. His failure to address and/or recognize Muaythai status following IWGA acceptance is not only discriminatory against the Plaintiffs, but demonstrates a lack of compelling governmental interest and is against the public interest.

In *Gulf, Colorado & Santa Fe Railway Co. v. Ellis*, 165 U.S. 150, 17 S. Ct. 255, 41 L. Ed. 666 (1897), the Court stated that:

> *"...it is not within the scope of the Fourteenth Amendment to withhold from States the power of classification."*

However, the Court continued,

> *"it must appear" that a classification is "based upon some reasonable ground—some difference which bears a just and proper relation to the attempted classification—and is not a mere arbitrary selection."*

The Plaintiffs assert that they do meet the exemption status as stated in that they allow for advancement to National, and International events that are determined by process of competition and qualification. However, after having to defend themselves against discrimination and prosecution, a complete lack of confidence and trust in the Defendants remains. It is the Plaintiffs' position that the Defendants' interpretation of the statute's plain language (that would otherwise grant exemption status to the Plaintiffs) arbitrarily discriminates against other legitimate organizations who are also recognized by the IOC as adhering to the goals of the Olympic Charter and as a result, enjoy the same status as the Pan American Sports Organization (PASO)—coordinator of the Pan American Games.

The exemption statute itself is discriminatory against the Plaintiffs in that it allows the Defendants to prevent an organization such as the Alliance from claiming status solely because the IWGA is not listed as an organization in the plain language of the statute. In this case, the IWGA enjoys the same status as the PASO. Demonstrating that the Defendants have a compelling interest in Muay Thai, acting in the public interest would dictate that the Defendants use logical judgment and that the statute be amended for clarification, but this has not been done.

### I. Damages

The following is a list of damages occurring as a result of the Defendants' discriminatory practices and violation of Constitutional Rights against the Plaintiffs:

> a. Harm to the Alliance's reputation which has resulted in: loss of time, loss of sponsorships, loss of memberships, slowed development of athletes, and loss of public trust.
>
> It is important to note that rather than keep the issue veiled, the Plaintiffs tried to mitigate the damages by keeping the public informed.
>
> b. Harm to the Chairman's reputation. The Chairman is an accomplished individual in the art and sport of Muay Thai *(See Exhibit QQ)*. The Chairman holds the distribution rights across the Southern United States for a well-known Thai liniment, Namman Muay *(See Exhibit RR)*. The Chairman is an Educational Administrator for the WMC-IGLA

program in the Eastern United States *(See Exhibit SS )*. Finally, the Chairman is Co-Founder of the Pan American Muaythai Union (PAMU) *(See Exhibit TT )*, and Owner/Principal of Muaythai Institute-Texas *(See Exhibit UU )*. As Owner/Principal of Muaythai Institute-Texas Chairman, Kayan Sitsanthaparn has over the years, taught students from all walks of life, but most notably amateur and professional athletes, business professionals, educators, U.S. Border Patrol agents, U.S. Marshalls, military personnel, as well as Local/State law enforcement officers.

*Arnold v. IBM Corp.*, 637 F.2d 1350 [9th Cir. 1981] held that a section 1983 plaintiff is also required to prove that a federal right was violated and, similar to tort law, that the alleged violation was a proximate or legal cause of the damages that the plaintiff suffered.

As such, it is the Plaintiffs' position that the false allegations and prosecution by the Defendants vilified the Plaintiffs in the eyes of the public and in their relationships with members, partners, and the global Muay Thai community as a whole causing damages to the Alliance and to its Chairman.

## J.   Request For Preliminary/Temporary Injunction

Plaintiffs will likely suffer further irreparable injury if the Defendants (including their employees, agents, and associated individuals) are not enjoined from enforcing the statutes that would prosecute the Plaintiffs and further violate their Civil Rights and Privileges as guaranteed by the United States Constitution.  *Winter v. Natural Res. Def. Council, Inc. 555 U.S. 7, 22 (2008)L Cellz In Vitro, Inc. vs. Cellz-Direct, Inc., 664 F.3d 922, 930 (Fed. Cir. 2012); Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011).*

There is a substantial likelihood that plaintiff will prevail on the merits because the underlying facts (and intent) surrounding the Defendants' prosecution of the Plaintiffs were adjudicated in favor of the Plaintiff and accepted by the Defendants.  *Dorem v. Salem Inn, Inc. 422 U.S. 931-32 (1975); Sindicato Puertorriqueno de Trabajadores v. Fortuno, 699 F.3d 1, 10-11 (1st Cir. 2012); Bluefield Water Ass'n v. City of Starkville, 577 F.3d 250, 252-53 (5TH Cir. 2009).*

The harm faced by Plaintiffs outweighs the harm that would be sustained by the Defendants if the preliminary/temporary injunction were granted.  It the Plaintiffs' position that through their actions, the Defendants have already demonstrated a bona fide lack of compelling government interest in Muay Thai and therefore would not be affected by the injunction.  However, since it has the authority to prosecute, the possibility exists for the Defendants to **continue prosecuting** the Plaintiffs for alleged violations and cause further irreparable harm.  *Yakus v. United States, 321 U.S. 414, 440 (1944); Opulent Life Church v. City of Holly Springs, 697F.3d 279, 297 (5th Cir. 2012); Coca-Cola Co. v. Purdy, 382 F.3d, 382 F.3d 774, 789 (8th Cir. 2004).*

The issuance of a preliminary/temporary injunction would not adversely affect the public interest. The Defendants have demonstrated a bonafide lack of compelling state governmental interest, therefore, as a result of excluding the Plaintiffs from any type of role in the regulatory/policymaking process, the Defendants cannot reasonably be acting in the public's interest in matters regarding the art and sport of Muay Thai.  *Opulent Life Church v. City of Holly*

*Springs, 697F.3d at 298; Alliance for the Wild Rockies, 632 F.3d at 1138-39; Abbott Labs. V. Sandoz, Inc. 544 F.3d 1341, 1362-63 (Fed. Cir. 2008).*

### K. Conclusion

Between 2009 to the present, the Defendants (and their employees) have had knowledge of the Plaintiffs' mission to educate the public, provide meaningful opportunity for participation, and to properly promote and preserve the art and sport of Muaythai in the State of Texas. It has also had knowledge of the Plaintiffs' proactive approach and willingness to work with the Defendants on various occasions. However, notwithstanding the fact that the Defendants do not have a legal right to regulate Muay Thai, the evidence has demonstrated that the Defendants were not willing to reciprocate the cooperation afforded to them in good faith. Because of the discriminatory, arbitrary, and capricious actions demonstrated by the Plaintiffs' evidence, they fall short of their mission *"to honor the trust of all Texans, ensure public safety and consumer protection, and provide a fair and efficient regulatory environment."* In doing so, they fail to demonstrate that they operate in a manner indicative of compelling state governmental interest in Muay Thai and against the public interest.

As a result, and as the evidence demonstrates, the Defendants are culpable in oppressing the Plaintiffs (and at least one associated individual) by way of intimidation and discouragement, by prosecuting them arbitrarily, capriciously, and discriminatorily under the color of law in a manner that violates the Plaintiffs' First Amendment Rights to Assembly (coordination of Alliance events), Speech/Expression (through participation in Alliance events), Freedom of Religion/Culture (engaging in cultural art/sport protocol that is prescribed by the governing bodies), and Rights and Privileges as stated in the Equal Protection Clause of the Fourteenth Amendments. Additionally it is the Plaintiffs' position that the enforcement of the current statutes enforced by the Defendants are unconstitutional because they discriminate against the Plaintiffs' status and further impede it from continuing its mission in the least restrictive manner.

### L. Prayer

Wherefore, the Plaintiff prays that this Honorable Court issue a **preliminary/temporary injunction** barring the Defendants—including their officers, employees, and/or agents--from initiating or engaging in all such enforcement and action against the Plaintiff until the merits of this petition have been heard and a final judgment has been issued in this matter. Upon a hearing on the merits, the Plaintiff prays that the Court issue a **permanent injunction** against the Defendants barring them from enforcement of any and all of the State's statutes enforced by the Defendants and related/referring to "Muay Thai" upon on the Plaintiff and all associated members including but not limited to, the coordination of any such events involving the aforementioned art and sport, as well as all available relief to which the Plaintiff is entitled by law to be granted. The Plaintiffs reserve the right to amend this petition as needed so that justice may be served.

Respectfully submitted,

*[signature]*

Mr. Kayan Sitsanthaparn
Chairman/Custodian of Records,
Filing pro se for Muay Thai Alliance of Texas (MTAT)
P.O. Box 953
Mercedes, Texas 78570
(956) 472-4792

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the Plaintiff's Original Petition has been mailed via U.S. Certified Mail Return Receipt Requested and First Class Mail to Mr. William H. Kuntz, Executive Director for the Defendants at P.O. Box 1215, Austin, Texas 78711.

*[signature]*
Kayan Sitsanthaparn

UNITED STATES DISTRICT COURT
for the
Southern District of Texas

| | |
|---|---|
| MUAY THAI ALLIANCE OF TEXAS, §<br>Kayan Sitsanthaparn §<br>Plaintiffs, §<br>§<br>V. §<br>§ Civil Action No._____<br>§<br>William H. Kuntz, and TEXAS §<br>DEPARTMENT OF LICENSING §<br>AND REGULATION (TDLR), et al. §<br>Defendants. § | |

## ORDER GRANTING TEMPORARY INJUNCTION

On this the _____ day of _____, 2015, came on to be considered the Plaintiff's request for temporary injunction. The Court having considered said motion, is of the opinion that the Plaintiff's request should be granted and shall jointly prohibit the Defendant, its officers, agents, servants, employees, and attorneys, and all other associated personnel from interfering in the Plaintiff's activities and bar any attempt to enforce any of the Defendant's policies, practices, and statutes on the Plaintiff.

The order shall be remain binding until the merits of this cause have been heard and a final judgment has been issued.

_____
U.S. DISTRICT JUDGE